## David Harter, et al., v. Mordecai Morris, Administrator.

1. PROMISSORY NOTE—*effect of introduction of.* The introduction of a promissory note establishes a *prima facie* case.

2. CONTRACT—*what court will look to, in construing.* In construing an indefinite or uncertain contract, the court has a right to adopt the construction apparently placed upon it by the parties themselves.

Action of assumpsit. Appeal from the Circuit Court of Fulton County; the Hon. R. J. GRIER, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed February 1, 1906.

CHIPERFIELD & CHIPERFIELD and FREDERICK M. GRANT, for appellants.

O. J. BOYER, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpit brought by appellee as administrator of the estate of Mordecai Morris, deceased, against appellants, to recover the sum of $500, and interest, alleged to be due on a promissory note given by appellants to appellee's decedent.

The declaration consisted of a special count alleging the making of the note and the failure of appellants to pay the

same. Appellants filed the pleas of general issue and payment. The court tried the cause without a jury and rendered judgment against appellants for the amount due on the note.

The evidence adduced by appellants tends to show that in 1902, appellee's decedent, Mordecai Morris, who prior thereto had resided at the home of, and been boarding with appellants, entered into a contract with appellant, David Harter, by the terms of which Harter agreed to keep Morris during his lifetime in consideration of the sum of $2,000; that if Morris gave Harter any extra trouble he was to give to Harter the note for $500 upon which this suit was brought; that Morris, who at the time of the making of the contract aforesaid was in fairly good physical condition, and able to attend to his necessary wants, thereafter lived with appellants for some two or two and one-half years, and then died; that for a year prior to his death, Mr. Morris became weaker, both physically and mentally, so that he required extra care and attention, which he received from appellants; that for some six months prior to the death of Morris his condition was such that it was not safe to let him move around without some one to watch and assist him; that during all of this time, appellants treated Morris very kindly and gave him the best of care, and many times during the last six months of the life of Morris had to assist him about the premises, about the house, and that by reason of his uncleanly habits he required considerable attention; that shortly prior to his death Morris fell and fractured his hip which rendered greater care by appellants necessary; that several days prior to his decease, appellee, accompanied by the witness Abram Morris, and Harvey D. Young, went to the residence of appellants and there took from the custody of Morris all of his papers including the note in controversy, and removed them to the bank for safe keeping, but that no claim to the note was then made by appellants.

The evidence further tends to show that neither of appellants had made any claim to the note during the lifetime of the deceased and it is not controverted that they paid the

annual interest thereon as it became due, up to the time of his death.

By the introduction of the note in evidence appellee established a *prima facie* case and it then became incumbent upon appellants under their plea, to establish payment of the note. This they claim they have done by proving an express contract based upon a sufficient consideration, which contract they on their part, fully performed. In support of such contention they rely upon the evidence of one Brown who testified in substance that appellant David Harter, being in peril of losing his home, he, the witness, stated to deceased, that he had better give Harter a couple of thousand dollars to keep him in his lifetime and thereby enable him, Harter, to save his home; that deceased consented to do so and said that "if he caused them any extra trouble that he would give them the note in question," and that thereupon witness submitted the proposition to Harter; that later, when the parties had come together for the purpose of consummating the contract, deceased said "that he would take care of himself as long as he could, but that if he caused them any special bother or trouble that he would give them the note in question."

Whether or not the plea of payment was established must depend upon the construction of the agreement above detailed. As to what was meant by the words "extra or special trouble" and "any special bother or trouble" in the connection in which they were used, we regard as indefinite and uncertain, and so it is as to the word "keep." In view of such uncertainty as to the rights and liabilities of the parties under the contract, it devolved upon the court to interpret or construe the same. It is unreasonable, if not improbable, that the deceased intended that in the event he received any care or attention in addition to actual board, lodging and laundry work, he intended to pay to appellants additional compensation therefor to the amount of the note. It is much more reasonable to suppose, when the condition of the parties and their surroundings, and the objects in view are considered, that it was intended by the deceased

that in case his life was prolonged beyond a reasonable expectation, and his condition of health became such as to render the contract unprofitable and burdensome to appellants, he would then award them additional compensation. We cannot say that the trial judge was unwarranted in finding that this was the sense in which the contract must have been understood by decedent and that appellants must have so understood it. Moreover in construing or interpreting an indefinite or uncertain contract, as we hold this to be, the court had a right to adopt the construction apparently placed upon it by the parties themselves. Walker v. R. Co., 215 Ill., 610. The evidence discloses that extra care for and attention to decedent became necessary and was extended to him at least eighteen months prior to his death on December 24, 1904. It further appears that on May 8, 1904, appellants paid to deceased the annual interest upon the note in suit, and it does not appear that at the time when his papers were taken away after his death, or any other time during the lifetime of deceased, appellants made any claim that they were entitled to the note. In view of these facts the trial judge evidently concluded that appellants did not consider that further or extra trouble or bother, within the meaning of the contract, had been imposed upon them, until after Morris's death. We are not disposed to hold that such conclusion was unwarranted nor that the interpretation placed upon the contract by the court was incorrect.

The judgment of the Circuit Court is in accordance with the law and the evidence, and is affirmed.

*Affirmed.*